2009-13-07 A. Epstein & Sons International v. Eppstein Uhen Architects, Inc. Good morning, counsel. I don't know if you were in the courtroom when I made my announcement earlier. When your case is called, which it just was, please approach the podium. Tell us whom you represent, your name and whom you represent. The proceedings are being recorded, so make sure that you're speaking clearly and slowly. We have read all of your materials, so I urge you to get to your strongest argument first. The at-launch should time himself and save a few minutes for questions. Good morning, Your Honor. My name is Tom Mulcahy. I'm with Claire Quish. We represent the Applee Epstein Uhen Architects. Good morning. May it please the Court. My name is Scott Fraden. I represent the Appellant A. Epstein & Sons International, Inc. in this matter. We are here today, Your Honors, because the trial court aired as a matter of law when it granted Applee A. Epstein Uhen as EUA. The matter before this Court arises out of a dispute regarding the meaning of two documents. Epstein refers to the first document as the November 6th document, and that document was authored by Epstein. Epstein refers to the second document as the December 9th document, and that document was authored by EUA. After EUA served Epstein with a demand for arbitration in which EUA sought to join Epstein into a currently then The trial court, however, found that the December 9th document was, in fact, the controlling agreement, and further, that there had been an agreement between the parties to arbitrate. Those findings evidence that the trial court committed three significant errors. The trial court first erred when it not a legally binding and enforceable agreement because it contained the word proposal. A review of the November 6th document, however, evidence is that it is fully integrated, fully binding, and fully executed agreement. Critically, the November 6th document was executed by EUA, and right above that signature line appears the words agreed and accepted by. Counsel, let me ask you. The November 6th document that is in dispute as to whether it was binding or not binding, when a party submits a document or a proposal in response to a request for proposal, does that submission of the proposal that they submit, does that become the contract without anything else being done? I mean, is that automatically a contract? No, I think once it's accepted, it becomes a contract. It is an offer. Without anything else? Simply by execution of that agreement and returning the agreement, agreed and accepted by, it's our position that, in fact, that creates a binding agreement between the parties. In fact, if you look at the case that we cite, which is Harris v. American General Financial, what is interesting about that case is that the Court points out that they signed a letter, and above the words on that letter, it said agreed. And to the Court, that was sufficient to create a binding agreement between the parties. Furthermore, in looking at the totality of the agreement, you have to look at the terms and conditions. And again, the terms and conditions of that proposal, that was a part of that proposal as the record evidence is, says that the proposal, together with the terms and conditions, forms a binding agreement between the parties. And it defines it as the agreement. Furthermore, the terms and conditions identify it as a fully integrated and binding agreement. So while I believe the answer to the Court's question is that by accepting, EUA's acceptance, agreed and accepted by, that proposal, it became a binding agreement, as further indicia of the fact that it's an agreement are the terms and conditions and what the terms and conditions express. Moving on, and I think I just described as far as what the terms and conditions set forth in the document, evidence that, in fact, as I said, it was an agreement. EUA claims that these terms and conditions are not admissible and are extrinsic evidence, because EUA, strike that, EUA argues that the terms and conditions should be, first they argue these terms and conditions should be ignored. They argue that there's no evidence that they assented to them. However, this is belied by the fact that they included these terms and conditions and this letter in their arbitration demand and the underlying arbitration. And again, the terms and conditions provide that they're expressly a part of the November 6th proposal. And where the trial court went wrong was it focused on the word proposal. And as we point out, it's well settled that the legal effect of an instrument is not governed by the words used or the nomenclature used. The November 6th document, Your Honors, clearly contained all the indicia of an agreement. Offer, acceptance, consideration, mutuality of obligation. So the question is, why did EUA send the December 9th document? And the reason, as Epstein alleges, is that it was a matter of housekeeping. EUA indicated to Epstein that this needed to be signed in order to process payment. That was it. That's the plain allegations before the trial court. And that is unrebutted by other evidence. Trial court clearly ignored this allegation, which led to the trial court's second error. The trial court erred as a matter of long-ranging summary judgment to EUA because there were disputed issues of material fact regarding the nature and effect of the December 9th document. Admittedly, Epstein signed the December 9th document just as EUA had signed the November 6th document. But could it not be disputed that Epstein set forth sufficient factual allegations concerning the circumstances surrounding the execution of the December 9th document to call into question exactly what the December 9th document is? Now, EUA argues that all of these allegations are extrinsic evidence and inadmissible. The problem is, is that EUA is wrong on point because we're not talking about whether or not the November 6th or the December 9th document is ambiguous. What we're talking about is whether a contract exists, what are its terms, and what was the intent of the parties. And under Illinois law, those questions of fact and extrinsic evidence, those are questions of fact and extrinsic evidence is clearly admissible. Therefore, because there's a question of fact as to what this December 9th document is, the trial court was clearly in error when it granted summary judgment on this point. The final error committed by the trial court is based on this dubious presumption that the December 6th document, I'm sorry, that the December 9th document is valid and enforceable. The trial court erred in finding that as a matter of law, the December 9th document contained an agreement to arbitrate. The language at issue provides, said engineering services shall be performed in accordance with the requirements set forth in the AIA document C-141-1997, standard form of agreement between architect and consultant in its entirety, pages 1 through 14. Admittedly, the C-141 contains an arbitration provision, but what Epstein argued was that the term requirements is the critical term and it is to be understood as binding Epstein only to those provisions in the C-141 relating to the manner in which Epstein was to perform its engineering services. Well, is this an ambiguity? It is possible that it could be an ambiguity. It is. We do set forth in our papers and we did. The arbitration agreement was not attached to any of these documents, as I understand it. That is correct, Judge. Okay. And it's brought in solely, it's incorporated by reference in maybe some sort of vague way in this December agreement or in an ambiguous way. Well, first I would take exception to whether or not it was incorporated. Our primary argument is our belief that, in fact, the way that that incorporation language is written, it's written in a fashion so that only requirements and arbitration isn't a requirement of service. But going to the question that was just posed by the Court, you are correct. If this Court were to say, well, there's two reasonable readings, one is it incorporated the entire thing into the agreement by reference, or alternatively it only applied to requirements, then in fact courts which have considered that very question have said where there is not a clear and unequivocal statement regarding the intention of the parties to be bound by a dispute resolution provision such as an arbitration provision, that provision is not considered part of the agreement. So we would agree. We believe that our interpretation of that language is clear. We believe that the substantial body of case law supports our position, the treatises support our position, that the word requirements has a very particular meaning, particularly in the construction context. And we cite cases from the Supreme Court on down. We cite Illinois cases, Luzek v. Gineris. We cite numerous cases which are not distinguished in any real way by Epstein-Ewing. But going back again to your question, it is true that it could be subject to two interpretations. And if, in fact, it is, then the law says that it has to be construed against the drafter. And if it is construed against the drafter, the drafter of the December 9th document was EUA. And therefore, under various cases which we cited, Turner Construction v. Midwest Curtain Wall, and also out-of-state court case Impact Constructors v. Superior Concrete out of Indiana, that ambiguity would render that provision unenforceable. So I see my time is about up, so I'm going to leave myself some time for rebuttal, if there's no further questions from the panel. Thank you. May it please the Court, Counsel. My name is Tom Mulcahy. I represent the appellee in this matter. Your Honor, we are here today to urge the affirmance of Judge Martin's decision granting summary judgment in our favor. I believe that the record that Judge Martin had before him and that this Court has before it readily demonstrates that under the Uniform Arbitration Act, Judge Martin made the right decision in ordering the parties to arbitration. I think it's important, and you didn't hear a counsel talk, a lot about the Uniform Arbitration Act or the provisions of that act. Counsel, isn't the fact that the two of you have differing views and can't agree on which document controls, isn't that a huge material issue of fact? I don't believe it is an issue of material fact, Your Honor, because we filed our arbitration demand, and the contract that we attached to that arbitration demand was the architect consultant agreement that was signed and executed by both parties. But they're claiming that that was not, they don't agree with that. And the intent, isn't the intent of the parties important here? And if it's not clear from the face of the document, if you need something else to help establish that intent, that something else would be extrinsic evidence? I believe, Your Honor, the intent of the arbitration demand that we filed is clear that we are pursuing arbitration based on the architect consultant agreement. And I also believe that the architect consultant agreement, as counsel for what we call the engineer, A. Epstein, argued in the trial court, there is no ambiguity contained in this architect consultant agreement. They argued before Judge Martin that the plain and unambiguous language of the architect consultant agreement, if it does apply, does not provide for arbitration of disputes. And you just heard counsel talk about he thinks requirements means one thing, and I know that Your Honor mentioned that requirements may be an ambiguous term. We don't believe it is based on the language incorporating the document C-141 in its entirety. And maybe if it's stopped there, there might be a question, but it goes on to say pages 1 through 14. And that happens to coincide with the pagination of the C-141 document. But with respect to how the November proposals play into our arbitration demand, I believe that Section 5-2E of the Uniform Arbitration Act renders that sort of discussion irrelevant for purposes of determining whether there's been a sufficient showing of no agreement to arbitrate. Counsel, can I interrupt you? I'm sorry. Yes. Can we go back to the proposal? Sure. What is missing in that proposal that makes it a proposal and not a contract? I believe that in some circumstances a proposal can rise to the level of a contract. In this case, however, the parties went further and executed a subsequent document. I understand that, but how does that affect the viability of the first one? Why can we not construe that as a contract? You are free to construe that as a contract if you find that the elements required for contract formation exist. However, that is not the agreement pursuant to which we are seeking arbitration. The parties, in fact, executed a subsequent agreement. So you admit there was an agreement as of November 6th? I believe that there was an agreement that the engineer, the client that we hired, agreed to perform certain services for a certain amount within a certain time schedule and submitted that in response to our request for a proposal. I think the course of dealings between these two parties evidences the fact that when those proposals were issued, my client did not have a contract with the owner of the project. So absent having a contract with the owner of the project, we obviously could not have gone to the next step. From my reading of the transcript, the court below treated it as a proposal and did not give it the credence and weight that it should have been given if the parties were in agreement that that was an executed contract because the trial court didn't consider it as one. The court said it was solely a proposal. So are you admitting the trial court erred there? I am taking the position, Your Honor, that the trial court need not have gotten into that issue. And even if the court did find that November proposals, which there were three of them, and even assuming the terms and conditions were attached to them. There weren't three of them. There was one, one of November 6th. Where are the other two? Correct that to me. Okay. The record site is for the November 6th, 2002 letter is C00420. That is a cover page from Thomas Smiles to Ms. Macklehan-Ide saying, quote, per your request, A. Epstein and Son International is pleased to submit the attached proposal for civil, mechanical, and structural design engineering services. That's a cover letter. That's a cover letter. That's not a proposal. That's correct. The cover letter attaches three separate proposals. We have one proposal. That's not true, Your Honor. I apologize. There is at record sites 421 through 426 a civil engineering services proposal. At record site 407 through 412, there is a civil engineering proposal that's also signed. And then from 412 through 418, there's a structural engineering services proposal. And that makes sense because if you look at the December architecture. They are all dated November 6th? They are all dated November 6th. That's correct. So you have a cover letter enclosing three separate proposals, all of which are signed separately. And there are terms and conditions that were included in that packet, although not referenced in the body of any of the proposals. Our position is that that's not sufficient to incorporate by reference those terms and conditions or bind my client. However, the terms and conditions, even as the court were to find that the November proposal was a contract, permit the parties to modify the agreement in writing signed by both parties. There's no way to look at the architect-consultant agreement, which contains the signature of both parties, contains modifications substantially to the proposals, including the requirement that the engineer shall procure insurance for the project. The proposals are also referenced in the body of the architect-consultant agreement. There are changes to the manner in which the engineer was to be paid. It went from 30 days in the proposals to seven days. And the record site for the architect-consultant agreement is C404 and 405. I know the court mentioned that AIA document C141 was not attached, but the law in Illinois is that we can incorporate by reference extrinsic documents. All the cases that the plaintiff has cited, the engineer has cited, relate to an agreement where you have a prime contract and a subprime contract. That's not the case here. The two parties, obviously, by the intent, glean from the plain and unambiguous language. Help me here. I'm still struggling with why the November 6th document is not a contract. There is a definite price. There is a defined scope of services. There are payment terms. There is a specific outline of time for performance. I mean, it has all the trappings of a contract. Why isn't it a contract? Simply because it says proposal or because it was what? Because what? Your Honor, I'm not going to disagree with you that there are elements of contract formation contained in that document. However, given the course of dealings between the parties, in other words, the subsequent modification to those terms and the subsequent execution of an agreement called not a proposal, but an architect-consultant agreement, I think that is what Judge Martin, and what I believe, shows the party's intent to have this later document be deemed the controlling document. Doesn't that go to the lack of an agreement as to what the intent of the parties are? I mean, you're saying you intended one thing, and he's saying something else. Isn't that a material issue? That's an issue that I think the arbitration should have to address. The function of the trial court pursuant to that. That could be a material issue. I don't believe that it's relevant to the issue that was before the trial court. It may be an issue in the arbitration. Why not? Because under the Uniform Arbitration Act, the burden is on the parties claiming that there is no agreement to arbitrate. They have to make a showing, a substantial and bona fide showing, that there is no agreement to arbitrate. But if they establish that the first contract, the November 6 one, that doesn't have any arbitration provision in it is the contract, I mean, doesn't that satisfy what you're suggesting? I don't believe they've made that showing, Your Honor. Well, assuming they do, it doesn't get to arbitration. If it doesn't get to arbitration, you can't bring in the Uniform Arbitration Act as your authority. The only reason that the plaintiff was before the trial court was pursuant to the Uniform Arbitration Act, in our opinion, that gives the court jurisdiction to determine whether there is an agreement to arbitrate. Certainly. But that's not the issue. The issue is whether or not, based on a summary judgment procedure, whether it was sufficient for the trial court to say, no question of fact, I know what it's all about. That proposal, I'm not going to consider it. It's not a contract. It's just a proposal. I'm going solely on that December contract, which incorporates by reference this arbitration. Again, I'll go back to my previous statement that even if this court applies and finds that the November proposal is our contract, there's terms and conditions which allow the parties to subsequently modify that agreement in writing, executed by both parties. Which is why it seems that it's yet to be determined what was the intent of these parties. What were they really agreeing to, requiring intrinsic evidence? Respectfully, Your Honor, I don't believe that that sort of determination is what is at issue under the Uniform Arbitration Act. No, that's not what he says. He's basically saying it's the opposite. And that illustrates the point, that, you know, is this a proper matter for summary judgment when the parties don't agree on what the intent was? I'm a little bit confused as to why the court believes that there was no agreement as to intent. There was initial proposals, even if you assume that that formed a contract, there were terms and conditions attached to the November proposals that allowed for subsequent modification. The subsequent modification has substantial and different terms,  obtained a million-dollar professional liability insurance policy, changing in the billing, reimbursable expenses. And moreover, the architect-consultant agreement incorporates, by reference, the consulting services shall be as specified in A. Epstein & Sons International, Inc., letter dated November 6, 2002. Clearly, the parties acknowledged that there were proposals and services set forth in those proposals when they executed this architect-consultant agreement because they adopted those proposals by reference. So I think that the intent has gleaned from the plain and unambiguous language of the architect-consultant agreement is that the parties certainly intended this to be an agreement or modification of the prior proposals. But in any event, Your Honor, I believe that the trial court's ruling should be affirmed because of the clear and unambiguous language incorporating, by reference, all of the requirements of C-141, which includes an agreement to arbitrate. Counsel, I want you to know I find it troubling that at the hearing before the trial court, the trial court was informed that the November document was solely a proposal and not an agreement. Yet before us, we now find out that the parties are essentially agreed that the November document, quote-unquote, is indeed a contract. And I think had the trial court been informed of that, this summary judgment motion would never have been agreed. Your Honor, I don't believe that is my position. I understand your position. Thank you. Okay, Mr. Frayden, brief rebuttal, please. Thank you. And as I think you just pointed out, Justice Harris, the position that was taken at the trial court and the position that was set forth here in today's argument are diametrically opposed. We believe that the November 6th document is an agreement between the parties. We alleged in the complaint that this December 6th, December 9th document was, in fact, a ministerial act. It was not a binding agreement. We don't get to a question of whether or not we put forward to an arbitrator this dispute. The issue under the Uniform Arbitration Act is that under Section 2 we're entitled to file a petition when we don't believe there's an agreement to arbitrate. We don't believe that there's an agreement to arbitrate. As you point out, Justice Harris, the fact of the matter is the trial court should have not granted summary judgment with respect to whether or not the November 6th document was and, in fact, is a binding agreement. You heard counsel outline fact after fact after fact question. We never got into discovery. You heard him mention issues of the conduct of the parties and the intent of the parties. And, again, I go back to the fact that our complaint, which is the only pleading in this matter other than the briefs, contains general denials of the allegations regarding lack of consideration, the intent behind sending that document, and whether the November document is, in fact, an agreement. In other words, you're basically saying, which is what I asked your opponent, that you don't agree on what the intent. You have differing views of what the intent of both parties were. Is that what you're saying? That is correct, Judge. Our position is very simple. We sent in a November 6th document. And, again, what you're bringing up, the issues of intent, what the document is, the courts say that where that happens, where parties say, well, what is the contract, which is what we're here asking, which is what we were doing in the trial court, you're supposed to then take extrinsic evidence. Counsel, can I ask you, counsel, your opponent suggests that the November 6th document proposal, contract, whatever we're going to call it, contained a provision relative to modification and provided for modification by subsequent document or whatever. Do you agree with that? And what's the effect of that provision relative to your argument? Justice Connors, in fact, the agreement does contain a provision allowing for modification by written documentation. The question of whether what that December 6th, 9th document is, is a question of fact. Could that be a modification? It could be. We dispute that it is. But what we asked the trial court to find, and it was the purpose of our petition under Section 2 of the Uniform Arbitration Act, was that to assume the predicate to your question, which is that that is a modification, a valid binding modification between the parties. Then is there, in fact, an agreement to arbitrate? That's when we get to that next level, that next question. And what we put forward in our position, in our papers and on our motion for partial summary judgment, is that the language that is referenced in that agreement is, does not require arbitration. It does not bind us to that arbitration provision. We also argue, as Justice Harris pointed out earlier, that it is possible to read it in two ways, in which case it's ambiguous. And if it's ambiguous, it's construed against the drafter and falls out. The point is that we are being, we were being, a demand for us to participate in an arbitration was made on a upside. We don't believe there's an agreement to arbitrate. Our only source of relief is under Section 2 to the Uniform Arbitration Act. And we proceeded in that manner. We believe the trial court erred in, one, finding that the November 6th document was a proposal and not binding on the parties, and second, that there was, in fact, an agreement to arbitrate. And for those reasons, and the reasons set forth in our briefs, we would ask that this court reverse the trial court. Thank you. Thank you. This matter will be taken under advisement.